IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


DIGITAL ALLY, INC.,

       Plaintiff,

       v.                                  No. 13-2550-SAC

UTILITY ASSOCIATES, INC.,

       Defendant.


MEMORANDUM AND ORDER

This declaratory judgment action relating to patent infringement comes before the Court on Defendant's motion to dismiss for lack of subject matter jurisdiction and personal jurisdiction. Plaintiff opposes the motion. The Court has reviewed the parties' submissions, including Plaintiff's notice of supplemental authority and Defendant's response to it, and is prepared to rule.

## I. Facts

Plaintiff is a Nevada corporation with its principal place of business in Kansas. Plaintiff sells advanced digital video systems to consumers, including law enforcement agencies, across the country. Plaintiff's products are designed for law enforcement vehicles and commercial fleets, such as ambulances and taxis. Defendant, incorporated in Delaware and having its principal place of business in Georgia, is a competitor of Plaintiff's. Defendant has no offices in Kansas and none of its employees or sales

agents reside here. Defendant is not registered to do business in Kansas, but sells some products to a few customers in Kansas.

U.S. Patent No. 6,831,556 (the '556 Patent), titled "Composite Mobile Digital Information System," was originally issued in December of 2004. It has been assigned 13 times, most recently to the Defendant. The claims of this Patent relate generally to a surveillance system for the storage and transmission of digital data.

Since March of 2006 Plaintiff has been selling products which use technology similar to that used in Defendant's products covered by the '556 Patent. When the '556 Patent was owned by Defendant's predecessor-in-interest, Plaintiff met with that owner to discuss Plaintiff's technology and possible joint ventures and/or acquisitions. Based on that predecessor's knowledge of Plaintiff's technology and its silence regarding any infringement, Plaintiff believed that the '556 Patent would not be asserted against its products so continued to manufacture and promote them through its nationwide sales and distribution channels.

Before Defendant was assigned the '556 Patent, the following contacts were made in Kansas regarding a potential joint business relationship between the parties:

- In November 2010, Defendant's president faxed a signed mutual non-disclosure agreement to Plaintiff's headquarters in Kansas.

- In April 2011, Defendant sent multiple emails to Plaintiff detailing the results of tests to integrate Defendant's product with Plaintiff's product.

- In August 2011, Defendant called Plaintiff to say that it had finished integrating the two products.

- In early September 2011, Defendant's new President sent multiple emails to Plaintiff explaining why it should resell Defendant's products as part of Plaintiff's mobile video surveillance systems.

- In September 2011, Defendant sent to Plaintiff a formal Letter of Understanding signed by Defendant's President.

- In October and November of 2011, Defendant sent sales quotes to Plaintiff for Plaintiff to use in sales pitches to two of its customers or potential customers.

- In October 2011, Defendant sent Plaintiff an email requesting a meeting in Kansas to discuss the business relationship.

- In November of 2011, two of Defendant's representatives came to Kansas and met with Plaintiff to discuss a potential joint business relationship between the parties. During this meeting, Defendant's employees gave a sales and technical presentation to Plaintiff's employees in Kansas. The meeting lasted less than 10 minutes, was unproductive, did not involve any discussion of

patent infringement or the '556 Patent, and did not result in any business relationship between the parties. Shortly after that visit, the parties ceased discussions regarding any potential joint business relationship.

Defendant acquired the '556 Patent in June of 2013. On and after October 14, 2013, Defendant's Chairman and CEO, a non-lawyer, sent letters to some of its potential customers, some of whom were Plaintiff's customers located outside Kansas. Those letters were substantially similar to the following:

> Utility Associates, Inc. ("Utility") is the owner of Boykin United States Patent No. 6,831,556 (the "Boykin patent") (attached). The Boykin patent relates to mobile video surveillance systems and methods. Utility has successfully manufactured and sold a mobile video surveillance system that is covered by the Boykin patent. Consequently, the Boykin patent has enjoyed a high degree of commercial success, and a major mobile video surveillance system provider has already paid for a license under the Boykin patent.
>
> As your office considers the purchase of mobile video surveillance systems for its public safety operations, you should consider the consequences of purchasing such mobile video surveillance systems from third parties that are not licensed under the Boykin patent. If your office purchases mobile video surveillance systems that are covered by the claims of the Boykin patent and that are not licensed under the Boykin patent, [you are] liable for patent infringement as a result of [your] use of such infringing mobile video surveillance systems. Infringement may subject [you] to an injunction against further use of the infringing mobile video surveillance systems and may result in an award of damages not less than a reasonable royalty, treble damages, attorney fees, and prejudgment interest. Moreover, Utility is entitled to collect damages directly from the user of the infringing mobile video surveillance systems leaving [you] left with whatever value any indemnity from the seller of the infringing mobile video surveillance systems might be worth if the seller does not have substantial financial resources.

> Therefore, in order to avoid the adverse consequences that may result from the purchase of infringing and unlicensed mobile surveillance systems, your office should consider purchasing its mobile video surveillance system needs from Utility.

Dk. 1, Exh. A. The letters were not sent to Plaintiff and are not alleged to have been sent to any of Plaintiff's customers in Kansas.

Thereafter, Plaintiff was contacted by concerned purchasing agents for two of its customers who had received such letters – one in the State of Nebraska and one in the State of New York. Plaintiff is obligated to indemnify these customers from any lawsuit for patent infringement. On October 25, 2013, eleven days after Defendant initially sent out some of these letters, Plaintiff filed this action asking the Court to declare that its products do not infringe Defendant's '556 Patent, or to equitably estop Defendant from enforcing that patent due to the "misleading conduct" of Defendant's predecessor-in-interest.

After Plaintiff filed this suit, it received feedback from some other customers about similar letters Defendant had sent. One received a letter from Defendant dated December 2, 2013, then sent Plaintiff an email attaching that letter and asking Plaintiff whether it was licensed under the '556 Patent or it had a reason why it didn't need to be. Dk. 15, Exh. K. In February of 2014, that customer sent Plaintiff another email saying that it could not process a purchase order for Plaintiff's products until it received a response to its December email. Another customer also received a letter from Defendant dated December 2, 2013. That customer had agreed "in late

2013" to purchase an order from Plaintiff by December 31, 2013, but thereafter expressed concerns with potential infringement and delayed its purchase from Plaintiff.

Plaintiff also alleges that its stock price took a marked dive beginning on October 23, 2013, due in significant part to its investors' knowledge of the Defendant's letter.

## II. Personal Jurisdiction

Defendant challenges both subject matter jurisdiction and personal jurisdiction. The Court chooses to first address the issue of personal jurisdiction. *See Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 423, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007) (" ... there is no mandatory sequencing of nonmerits issues ... A court has leeway, to 'choose among threshold grounds for denying audience to a case on the merits ....' ") (internal citations omitted).

### A. Standard

Personal jurisdiction issues in declaratory judgment cases relating to patent infringement are determined under Federal Circuit law. *Autogenomics, Inc. v. Oxford Gene Technology Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009); *Silent Drive, Inc. v. Strong Indus., Inc.,* 326 F.3d 1194, 1201 (Fed.Cir. 2003). Where, as here, no discovery has been conducted, the plaintiff need only make a prima facie showing that the defendant is subject to personal jurisdiction. *Silent Drive,* 326 F.3d at 1201. Accordingly, the

Court construes the pleadings and affidavits in the light most favorable to the plaintiff. *Id.*

A United States district court may exercise personal jurisdiction over a defendant if the defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed.R.Civ.P. 4(k)(1)(A). The district court's exercise of jurisdiction over an out-of-state defendant must be consistent with both the forum state's long-arm statute and the requirements of due process. *See Avocent Huntsville Corp. v. Aten Int'l Co.,* 552 F.3d 1324, 1329 (Fed.Cir. 2008). Because Kansas's long-arm statute is coterminous with due process limitations, *Marcus Food Co. v. DiPanfilo,* 671 F.3d 1159 (10th Cir. 2011), the personal jurisdiction issue in this case turns on whether the court's exercise of jurisdiction would be consistent with the requirements of due process.

## B. Specific Jurisdiction

Specific jurisdiction must be based on activities that arise out of or relate to the cause of action, and can exist even if the defendant's contacts are not continuous and systematic. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). To satisfy due process requirements for establishing specific jurisdiction over a defendant, the plaintiff must show that the defendant purposely directed its activities at residents of the forum and that the plaintiff's claim arises from or relates to those activities. In addition, the plaintiff must satisfy the court that the

assertion of personal jurisdiction under the circumstances is reasonable and fair. *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.,* 444 F.3d 1356, 1363 (Fed.Cir. 2006).

In declaratory judgment actions, only those activities of the patentee that relate to the enforcement or defense of the patent can give rise to specific personal jurisdiction.

> In *Avocent Huntsville Corp.,* we explained that an action for a declaratory judgment "arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit," and that the relevant inquiry for specific jurisdiction is "to what extent … the defendant patentee purposefully directed such enforcement activities at residents of the forum and the extent to which the declaratory judgment claim arises out of or relates to those activities." 552 F.3d at 1332 (internal quotation marks and citations omitted). Thus, only those activities of the patentee that relate to the enforcement or defense of the patent can give rise to specific personal jurisdiction for such an action. *Id.* at 1336; *accord Autogenomics,* 566 F.3d at 1020.

*Radio Systems Corp. v. Accession, Inc.*, 638 F.3d 785, 789-790 (Fed. Cir. 2011). Thus "only enforcement or defense efforts related to the patent rather than the patentee's own commercialization efforts are to be considered for establishing specific personal jurisdiction in a declaratory judgment action against the patentee." *Autogenomics,* 566 F.3d at 1020, citing *Avocent Huntsville,* 552 F.3d at 1336.

Accordingly, where a patent holder's contacts within the state with a potential supplier are focused on generating a market for the patented product, not on enforcing or defending the particular patent, those contacts are insufficient for the exercise of specific personal jurisdiction in the state.

Defendant contends that the purpose of the 2011 meeting was "to discuss a business relationship unrelated to the '556 Patent," which it did not acquire until approximately 18 months later. Dk. 6 p. 3. Plaintiff contends that its digital video surveillance systems are the "very same systems for which [Defendant] was seeking a business partnership with [Plaintiff]" in 2011 and for which it is now threatening Plaintiff's customers with patent infringement. Dk. 15 p. 9.

The Court assumes the truth of Plaintiff's assertion above, yet the undisputed facts show that the communications between Plaintiff and Defendant in Kansas occurred long before Defendant acquired the '556 Patent, and were focused on the creation of a cooperative business arrangement to market products. Those contacts were of an entirely different nature than enforcement-related activities in the forum which could support specific jurisdiction.

The only other purposeful direction of Defendant's activities at residents of Kansas is Defendant's sales to five customers here, but Plaintiff does not allege that its claim arises from or relates to those activities.

Nor does Plaintiff rely on the letters in asserting personal jurisdiction over Defendant, as no evidence shows that any such letter was sent to anyone in Kansas. Yet even if the Court construed Defendant's letters as cease-and desist letters, and even had Defendant sent them to Plaintiff's customers in Kansas, that would alone be insufficient to subject Defendant

to personal jurisdiction in Kansas. *See Red Wing Shoe Co. v. Hockerson–Halberstadt, Inc.,* 148 F.3d 1355, 1360 (Fed.Cir. 1998) (holding that three cease-and-desist notices sent by a patentee to an alleged infringing party in a different state are not sufficient to subject the patentee to specific jurisdiction in that state). As a matter of patent law policy, "[p]rinciples of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." 148 F.3d at 1360–61. Accordingly, no basis for specific jurisdiction has been shown.

### C. General Jurisdiction

Plaintiff also makes a cursory argument that this court has general jurisdiction over Defendant because Defendant has had "continuous and systematic general business contacts" with Kansas. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). General jurisdiction "requires that the defendant have 'continuous and systematic' contacts with the forum state and confers personal jurisdiction even when the cause of action has no relationship with those contacts." *Silent Drive,* 326 F.3d at 1200 (quoting *Helicopteros,* 466 U.S. at 416).

To meet its burden, Plaintiff relies in part on the fact that Defendant maintains a sales representative specifically covering Kansas. At the time this suit was filed, Defendant had one agent responsible for sales in

approximately 20 states, including Kansas, in the western region of the United States. From January of 2011 through December of 2013, Defendant sold its products to five customers in Kansas, amounting to 1.7% of Defendant's total sales for that three-year period. This very small volume of sales falls short of enough to support general jurisdiction. *See Campbell Pet Co. v. Miale*, 542 F.3d 879, 881–884 (Fed.Cir. 2008) (finding 2% insufficient).

Plaintiff also relies on Defendant's contacts with the Plaintiff in Kansas, which consist largely of emails sent to Plaintiff in Kansas, and one personal meeting in Kansas. But Defendant has no physical presence or license to do business in Kansas, and none of the facts show that Defendant had more contact with Kansas than the defendant in *Helicopteros* had with Texas— repeated purchases and visits by personnel over a number of years. *See* 466 U.S. at 418, 104 S.Ct. 1868 (holding that "purchases, even if occurring at regular intervals" were insufficient to establish general personal jurisdiction over a nonresident corporation); *Campbell Pet Co.,* 542 F.3d at 881–884 (Fed.Cir. 2008) (finding no general jurisdiction from twelve sales yielding about $14,000 in revenue over eight years, conference attendance in forum where products were demonstrated and orders taken, and a generally accessible website); *Grober v. Mako Products, Inc.*, 686 F 3d 1335, 1346 (Fed. Cir. 2012) (finding no general jurisdiction where defendant shipped some product into forum state, exhibited products at a trade show there,

and placed an ad twice a year in a nationally distributed trade publication based in the forum state, and listed on its website a contact in the forum state). Rather, this "is a classic case of sporadic and insubstantial contacts with the forum state, which are not sufficient to establish general jurisdiction over the defendants in the forum." *Campbell Pet Co.,* 542 F.3d at 884.

### III. Subject Matter Jurisdiction

The court finds it unnecessary to address Defendant's assertion that the court also lacks subject matter jurisdiction.

IT IS THEREFORE ORDERED that Defendant's motion to dismiss (Dk. 6) is granted based on lack of personal jurisdiction.

Dated this 9th day of April, 2014, at Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge